Morrisett agt. The People.

———◆◆———

## SUPREME COURT.

CHARLES D. MORRISETT, plaintiff in error agt. THE PEOPLE, defendants in error.

Where the counts in an indictment for *murder* charge the killing, or the injuries which resulted in death, to have been perpetrated while the prisoner and his associates were engaged in the commission of *arson*, the prisoner cannot be convicted of *manslaughter* in the first degree.

*New York General Term, June,* 1861.
CLERKE, SUTHERLAND and INGRAHAM, *Justices.*
MOTION for a new trial on behalf of the plaintiff in error.

WILLIAM H. BOWNE, *for plaintiff in error.*
NELSON J. WATERBURY, *district attorney, for defendants in error.*

By the Court, SUTHERLAND, Justice. The prisoner was jointly indicted with one Antoine Le Compte and one Come

A. Morrisett for the murder of one Jean Baptiste La Rochelle, on the 9th day of April, 1860.

The indictment contains three counts; the first charges the murder to have been committed feloniously, &c., by casting, pushing and throwing the deceased into a building on fire, which had been wilfully and feloniously set on fire by the prisoner and his associates, the second and third counts severally charge the arson, and then charge that the deceased was mortally burned and killed by the prisoner and his associates, while engaged in the commission of said felony and arson.

The prisoner pleaded not guilty, and was tried separately at the oyer and terminer in the city of New York. The jury found the prisoner " not guilty of murder, but guilty of manslaughter in the first degree."

I see no errors during the trial, either in the admission or rejection of testimony, or in the charge of the court.

The dying declaration of La Rochelle was clearly admissible in evidence. It was shown to have been duly made, and to have been reduced to writing in the presence of the hospital surgeon, police justice, fire marshal and others, and that at the time it was so made, La Rochelle considered himself in a dying condition, and that he had been before making the same advised by his attending physicians that he was in a dying condition. Besides, it appears to have been made and sworn to in the presence of the prisoner, and that the prisoner had an opportunity to ask the deceased any questions.

The grounds upon which the prisoner's counsel insists that this dying declaration was not admissible, appear to me to point rather to its weight or effect as evidence than to its admissibility as evidence.

It is not necessary to refer to the other testimony given on the trial, either on the part of the people or on the part of the prisoner, except to state, that it appears from the

testimony that the fire was on the 20th of March, 1860, and that La Rochelle died on the 8th of April, 1860.

Nor is it necessary to notice the several requests of the prisoner's counsel to charge or instruct the jury. They were all, I think, properly refused by the court. They all appear to have assumed, or to have been made on the idea, that the prisoner could not be convicted in consequence of the passage of the act of April 14th, 1860, entitled, "An act in relation to capital punishment, and to provide for the more certain punishment of the crime of murder."

In answer to the sixth request to charge, and perhaps it may be said in answer to all the requests to charge, the court declined to instruct the jury " that if any offence was committed by the prisoner, which is now punishable, it was murder in the first degree and no other," except that the court did charge the jury, that the prisoner could not be convicted of murder in the first degree.

This charge of the court was, I think, right.

By an act of April 14th, 1860, the crime of murder is divided or classified into two degrees. By § 2, " All murders which shall be perpetrated by means of poison, or by lying in wait, &c., or which shall be committed in the perpetration or attempt to perpetrate any arson, &c., shall be deemed murder of the first degree; and all other kinds of murder shall be deemed murder of the second degree."

The prisoner was not and could not have been indicted under the act of April 14th, 1860, for the crime if committed was committed before the passage of that act; but by § 9 of the act, the punishment of murder in the second degree as prescribed in the act, " shall apply to all crimes now punishable with death, except," &c.

The punishment prescribed by the act of 1860, for murder in the second degree, is imprisonment in state prison for life.

The charge of the court, that the prisoner could not be convicted of murder in the first degree, had reference merely to the form of the verdict, and the form of the verdict to

the punishment merely under the act, for a crime commit-
ted before the act ; the act not having pardoned or affected
the crime, but having altered the punishment.

I think, then, the charge of the court was correct; that
the jury could not convict the prisoner of murder in the
first degree, but that they might have convicted him of
murder in the second degree.

But the jury did not convict him of murder, or of mur-
der in either the first or second degree, but of manslaughter
in the first degree.

Under the indictment against the prisoner, could the jury
convict him of manslaughter in the first degree ?

This is really the material question presented by the writ
of error in this case, although raised obscurely, if at all, by
the prisoner's counsel. But we cannot avoid seeing that
the record presents this question; and it must be disposed of.

It is plain to me that the prisoner could not be convicted
of manslaughter in the first degree under the indictment,
for the reason that manslaughter in the first degree was not
and could not have been included in the charge or accusa-
tion, or in either of the charges or accusations contained in
the indictment. (*See opinion in Hennessy* agt. *The People*,
*decided at this term, and the cases there cited.*)

Manslaughter in the first degree is defined by the Revised
Statutes to be " the killing of a human being, without a
design to effect death by the act, &c., of any other, while
such other is engaged,

" 1st. In the commission of a crime or misdemeanor not
amounting to felony ; or,

" 2d. In an attempt to perpetrate any such crime or mis-
demeanor."

The Revised Statutes also declare " every person delib-
erately assisting another in the commission of self-murder,"
and " the wilful killing of an unborn quick child, by any
injury to the mother of such child," &c., shall be deemed
guilty of manslaughter in the first degree.

Morrisett agt. The People.

It is clear, if the crime of manslaughter in the first degree as defined by the Revised Statutes, was included in the charge or accusation against the prisoner, it must be the crime as defined by the first provision, the killing of another without design in the perpetration of a crime or misdemeanor, or in an attempt to commit a crime or misdemeanor, not amounting to felony. The two last counts of the indictment, and perhaps all of them, charge the killing, or the injuries of which La Rochelle died, to have been perpetrated while the prisoner and his associates were engaged in the commission of arson. Arson is a felony—every degree of arson is a felony—a person convicted of arson in the fourth and lowest degree, is liable to punishment by imprisonment in state prison, and, therefore, arson even in the fourth degree is a felony. How then can it be said, that the crime of killing another in the perpetration of a misdemeanor, or in an attempt to commit a misdemeanor, was or could be included in the charge in the indictment? A misdemeanor may certainly be included in a felony; but a misdemeanor cannot be included in arson; for the lowest degree of arson is a felony by statutory definition, and the jury could not, by rejecting or disregarding any circumstance or circumstances which constitute or enter into the definition of arson, reduce the crime of arson to a misdemeanor. Under the first count in the indictment, perhaps the jury might have convicted the prisoner of an assault and battery merely, for that offence is included in the charge in that count; but no other misdemeanor, or attempt to commit a misdemeanor, is charged or included in the charge or accusation in that count. If the prisoner and his associates did wilfully burn the house, as charged in that count and in the other counts, it was arson, and no other or less offence.

My conclusion is, that the prisoner could not be convicted of manslaughter in the first degree, under the indictment, and that there should be a new trial.

INGRAHAM, Justice, dissenting.   The indictment in this case contained three counts.

The first charged that the prisoner, intending and contriving one La Rochelle, wilfully, &c., to kill, burn and murder, having wilfully and feloniously set fire to a certain building, &c., and while the building was burning, by the act of the prisoner and his accomplices, into the fire and flames, wilfully, &c., did cast, push and throw the said La Rochelle, and that the said La Rochelle was thereby mortally burned, and of such burning did afterwards die.

The second count charged that the prisoner and his accomplices did set fire to a building, not a dwelling-house, and that La Rochelle then and there being in the said house at and during the burning, was, by means of the said burning so done and committed by the prisoner and his associates, mortally burned, and of such burning died.

The third count charged the same facts, with the addition, that the killing by the prisoner was while the parties were engaged in the perpetration of the felony and arson.

Under this indictment the prisoner was convicted of manslaughter in the first degree.

I concur with Justice SUTHERLAND in the views expressed by him, as to the exceptions taken upon the trial, both as to the rulings upon the evidence and as to the Judge's charge and refusals connected therewith.   I do not think it necessary, therefore, to re-examine those questions here.

The point upon which the conviction is deemed to be erroneous is, that as the indictment charged the killing to have been perpetrated while the prisoner was engaged in the commission of the crime of arson, he could only be convicted of the crime of murder, and not of manslaughter in the first degree.

I concede that this rule is correct, if the indictment sets out the offence in this manner in each count therein.

The crime of arson being in all its grades a felony, if the deceased was killed by the prisoner while engaged in the

perpetration of that offence, he could only be convicted of the crime of murder, because by the statute, when the prisoner was engaged in the commission of the felony, if he committed the homicide, the offence is declared to be murder, and when the prisoner was engaged in the commission of a misdemeanor, the offence is declared to be manslaughter.

Upon an examination of this indictment, I think it is apparent that the first and second counts do not charge that the prisoner was engaged in committing, or in the attempt to commit a felony.

The averment that he had set fire to a building, was only inducement to show the mode by which the death was produced. It was no more than averring that the prisoner had made a fire, into which, for the purpose of taking life, he pushed the deceased.

In both the first and second counts, also, it is averred, that the firing of the building had taken place, and that while the building was burning, the prisoner pushed the deceased into the fire.

Neither of these counts would be good for the charge of murder, while the prisoner was engaged in committing a felony, or attempting to do so.

The question then arises, whether the conviction for manslaughter could be sustained on an indictment charging the prisoner with killing another, by pushing him into a fire which the prisoner had previously kindled.

In the present case, we cannot review the finding upon the facts. All the testimony is not contained in the error-book, but only so much as is necessary to present the exceptions taken on the trial.

The difficulty with this branch of the case is, that no such point was presented at the trial, no request to charge as to these counts of the indictment, and no exception whatever embracing this objection.

The judge's charge is not given, and the whole of it was without any exception.

If the prisoner had insisted that the conviction of manslaughter was wrong, he should, when the jury brought in that verdict, have objected, and requested the court to instruct the jury that such a verdict could not be received, and asked to have them sent back under proper instructions from the court. By not objecting, he must be considered as assenting to the verdict in the form in which it was rendered.

I suppose that under this indictment the prisoner might have pleaded guilty of manslaughter in the first degree, and such a plea would after judgment be held valid. The same rule must be held as to a verdict if not objected to at the trial, or when rendered.

It is well settled that under the common law indictment for murder, the prisoner could be convicted of any degree of manslaughter which the evidence would make out; and so also it has been held that under the common law indictment for manslaughter, the prisoner could be convicted of the offence in any degree according to the evidence. (*People* agt. *Butler*, 3 *Park. Cr. R.*, 377.) The conviction in the latter case was reversed because the judge instructed the jury to find such a verdict, which was excepted to.

The killing of a human being without the authority of law is divided, where such killing is criminal, into two classes, murder and manslaughter, and those classes are again subdivided. Under the rules above referred to, a prisoner tried under an indictment for murder may, according to the evidence, be convicted of either class of the offence, and of either subdivision of such class according as the evidence makes out the offence; and if the indictment had been for manslaughter only, then the conviction for either degree of manslaughter would have been within the power of the jury according as the evidence would warrant. This rule necessarily is so, because an acquittal on this indictment would have been a bar to any other indictment for the same killing.

The statute expressly provides that such a rule shall exist upon an indictment charging an offence of different degrees.

I can very easily see how a jury might, in such a case as this is, arrive at a result which would warrant this conviction. If the fire had merely been communicated to the goods, and not to the building, there might have been doubt as to the commission of the felony; but at the same time, the evidence showed a conspiracy to defraud the insurance company between the prisoner and his associates. If, under such circumstances, the jury leaned to the side of mercy, and instead of convicting the prisoner of a crime that would have forfeited his life, have taken the lesser degree of that offence, it furnishes no ground for a reversal. That they believed him guilty of unlawfully taking the life of deceased is evident, and the only question was as to the grade of the offence. Had the verdict been " guilty of murder," that verdict would have been sustained. I see no reason why we should interfere with it because it convicts the prisoner of a milder offence.

I think the judgment should be affirmed.